## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK WALSH, JR.**                                CIVIL ACTION

**VERSUS**                                           NO. 24-2153

**ECO ROOF AND SOLAR, INC., ET AL.**                 SECTION "O"

### ORDER AND REASONS

Before the Court is a motion[1] filed by Defendants ECO Roof and Solar, Inc. and Dylan Lucas in which they request that the Court set aside the clerk's entry of preliminary default. Plaintiff opposes[2] the motion. For the following reasons, the Court **DENIES** Defendants' motion.

## I.   BACKGROUND

This litigation arises from Patrick Walsh, Jr.'s two-year span of employment with ECO Roof and Solar, Inc. ("ECO") and its alleged failure to pay him hundreds of thousands of dollars in compensation after he was terminated and defamed.

Patrick Walsh, Jr. is a Louisiana citizen residing in Jefferson Parish.[3] ECO Roof and Solar, Inc. ("ECO"), which is incorporated and has its principal place of business in Colorado, is a general construction firm specializing in storm restoration; it operates its storm restoration business in Louisiana out of a commercial building

---

[1] ECF No. 22.
[2] ECF No. 25.
[3] ECF No. 1 ¶ 1.

in Metairie.[4] Dylan Lucas, a citizen of Colorado, is ECO's President.[5] Ryan Nichols, a citizen of Texas, is ECO's Chief Executive Officer.[6]

After hurricanes caused damage in south Louisiana in 2020 and 2021, ECO entered into contracts to restore and repair damage to various buildings in the New Orleans area.[7] To manage the work, ECO employs project managers, whom it compensates on a commission-only basis and whom it treats as exempt employees not entitled to overtime pay or regular wages.[8]

In September 2021, Walsh became an ECO roofing and building restoration commercial project manager, whose duties were set forth in an Employment Agreement.[9] And ECO agreed to compensate Walsh in accordance with a commission structure set forth in the Agreement.[10]

As an ECO project manager, Walsh secured various contracts for projects in the New Orleans area for which he alleges that he earned commissions, including such projects as Kloeckner Metals Corporation; New Orleans Aviation Board ("NOAB"); Davis Drapery; Goodwill Industries; Conley Marina Services; and Shelley Waguespack.[11] Walsh alleges that the Kloeckner Project in particular was a multi-million dollar contract and, despite that the project is now complete, ECO paid Walsh only a 2% draw on his commission, ECO and its principals have refused to pay the

---

[4] *Id.* ¶¶ 2, 9, 12.
[5] *Id.* ¶¶ 3, 10.
[6] *Id.* ¶¶ 4, 11.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 15.
[9] ECF No. 1-2.
[10] *Id.*
[11] ECF No. 1 ¶ 21.

remaining commission due, and instead Defendants have devised ways not to pay Walsh the commission on several projects, including the Kloeckner Project (for which the outstanding commission due Walsh is $355,464.23).[12] What is more, Walsh alleges that Lucas—in an attempt to enrich himself and Nichols—fraudulently attempted to persuade Walsh to execute a release to waive his right to commissions due.[13]

Walsh alleges that Lucas has admitted that ECO owes Walsh commissions on various projects.[14] Nevertheless, Walsh alleges that ECO, Lucas, and Nichols have engaged in fraudulent conduct, including inflating or falsifying expenses on projects managed by Walsh and misallocating the costs among projects, in order to prevent Walsh from receiving commissions (or to artificially reduce the commissions) he is owed.[15]

On September 1, 2023, Walsh alleges that ECO terminated Walsh's employment following an incident in which he raised concerns regarding poor quality work on projects Walsh had procured for the NOAB at the Louis Armstrong New Orleans International Airport.[16] Walsh alleges that ECO used this incident as a pretext to terminate him and to avoid paying him commissions owed.

The alleged incident leading to Walsh's termination unfolded as follows. While these projects were underway, ECO had no superintendent with a security badge at

---

[12] *Id.* ¶¶ 22-33, 35.
[13] *Id.* ¶ 34.
[14] *Id.* ¶ 56.
[15] *Id.* ¶¶ 59-63.
[16] *Id.* ¶¶ 36-39, 45, 46-49.

the airport so Walsh alleges he had to obtain a security badge, at his cost, and be present on-site for several months so that ECO could perform its work to complete the airport projects.[17] Walsh alleges that he was never paid for the hundreds of hours he worked onsite supervising subcontractors, despite that this work was beyond the scope of his duties as project manager.[18] When he arrived on September 1, 2023 to inspect the work, Walsh raised concerns about the quality of the work and the failure to install necessary insulation per the project's plans.[19] In response to Walsh articulating his concerns, fellow ECO employee, Juan Castillo, "threatened Plaintiff on the roof of the building at the airport and became verbally and physically aggressive shouting at the Plaintiff" and threatening "I'll kill you."[20] Walsh alleges that his fear of death or bodily harm was exacerbated by the fact that the men were on the roof, so Walsh alleges he took a defensive posture, concerned that Mr. Castillo may initiate a physical altercation.[21] Walsh alleges that he never struck or physically harmed Mr. Castillo.[22] However, upon information and belief, it is alleged that Lucas or other ECO employees "misrepresented the incident to the NOAB, Kloeckner Metals, and other customers[,] by claiming that Plaintiff was the aggressor and that he assaulted and punched and/or kicked Mr. Castillo during the incident"; statements that Walsh alleges were false.[23]

---

[17] *Id.* ¶¶ 40-43.
[18] *Id.* ¶¶ 44, 41.
[19] *Id.* ¶ 45.
[20] *Id.* ¶ 46.
[21] *Id.* ¶ 47.
[22] *Id.* ¶ 48.
[23] *Id.* ¶ 50.

As a result, Walsh alleges that his employment was terminated without investigation; he was no longer permitted on airport property except to travel; he lost his business relationship with NOAB as well as other customers; he lost out on a large solar contract he was in the process of closing with Kloeckner Metals; and he has not been paid commissions owed for the NOAB (and other) projects.[24]

On December 19, 2023, Walsh through his counsel made written demand on ECO in accordance with La.R.S. 23:631 for all unpaid wages he is owed, to no avail.[25] Walsh alleges that ECO, through its owners and attorneys, has represented at various times that it intends to pay Walsh what he is owed; however, ECO has failed or refused to pay Walsh since ECO terminated Walsh's employment.[26]

This lawsuit, which has proceeded in fits and starts, followed. On August 30, 2024, invoking the Court's diversity jurisdiction as well as federal question jurisdiction under the Fair Labor Standards Act, Patrick Walsh, Jr. sued ECO Roof and Solar, Inc., Dylan Lucas, and Ryan Nichols.[27] Walsh seeks redress for breach of contract, unpaid wages under state and federal wage laws, violations of Louisiana Unfair Trade Practices and Consumer Protection Law, fraud, defamation, and Walsh additionally seeks to pierce ECO's corporate veil so that Lucas and Nichols are jointly and severally liable with ECO.

---

[24] *Id.* ¶¶ 49-55.
[25] *Id.* ¶ 64.
[26] *Id.* ¶ 65.
[27] ECF No. 1.

5

Summons issued to each defendant in September 2024.[28] Defendant Ryan Nichols was served on December 18, 2024 per the affidavit of service entered into the record; Nichols' answer deadline was January 8, 2025.[29] Defendants ECO Roof and Solar, Inc. and Dylan Lucas each returned an executed waiver of service, with answer deadlines set for November 8, 2024.[30] None of the defendants filed a timely answer. After a show-cause order issued on February 7, 2025 directing Plaintiff to obtain responsive pleadings or preliminary defaults on the defendants, Plaintiff filed a notice of suggestion of ECO's chapter 11 bankruptcy petition and notice of automatic stay of proceedings.[31] Walsh also moved to stay the proceedings.[32] The Court granted the motion to stay on February 20, 2025.[33] Two months later, the Court reopened the case on Plaintiff's motion.[34] According to Walsh, the bankruptcy case was ultimately dismissed without any discharge of ECO's debts.[35]

Still no answer from Defendants, the Court issued another show-cause order that Walsh obtain responsive pleadings or an entry of default.[36] In response, on May 30, 2025, Plaintiff moved for entry of default as to each of the three Defendants.[37] That same day, Walsh also mailed a copy of his motion for entry of default to ECO and Lucas at the office of ECO's registered agent in Denver, Colorado, to Lucas at his

---

[28] ECF No. 6.
[29] ECF No. 9.
[30] ECF Nos. 7, 8.
[31] ECF No. 11.
[32] ECF No. 12.
[33] ECF No. 14.
[34] ECF Nos. 15, 16.
[35] ECF Nos. 25; 15-2.
[36] ECF No. 17.
[37] ECF No. 18.

home address, and to Nichols at his home address.[38] On June 3, 2025, the Clerk granted the motion, entering a preliminary default as to each Defendant as requested.[39]

Nearly six weeks later, counsel moved (and the Court granted the motion) to enroll on behalf of Defendants ECO as well as Mr. Lucas (but not Mr. Nichols).[40] Counsel for ECO and Lucas also filed a motion to set aside the Clerk's entry of default.[41] Plaintiff promptly filed his opposition to the motion to set aside entry of default.[42] No reply was filed. Nor has any defendant requested leave to file into the record any proposed answer or responsive pleading indicating defenses or responses to Walsh's claims.

Though Defendant Lucas initially moved to dismiss the complaint for lack of personal jurisdiction (along with a motion requesting a stay of the submission date and authorization for jurisdictional discovery), he later withdrew his motion to dismiss and the Court dismissed as moot the motion to stay submission date and request to authorize jurisdictional discovery.[43]

The Court now turns to consider ECO's and Lucas's motion seeking to set aside the clerk's entry of preliminary default and Plaintiff's opposition thereto.

---

[38] ECF Nos. 25; 25-3, 25-4, 25-5.

[39] ECF No. 20.

[40] ECF Nos. 21, 24. Court orders mailed to Ryan Nichols, *pro se*, have been returned as undeliverable. *See* ECF Nos. 32, 33, 34, and 35 ("court only").

[41] ECF No. 22.

[42] ECF No. 29.

[43] ECF Nos. 26, 27, 30, 31.

## II.   LAW AND ANALYSIS

Courts prefer to resolve a case on the merits rather than to enter a default judgment, which is a "drastic" and "disfavored" remedy, resort to which is reserved for "extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted) (observing that "[a] defendant in federal court is entitled to an adequate opportunity to present a defense without suffering a possible default judgment"). Nevertheless, when a party "has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Entry of default may be followed by an application for a default judgment, which may be issued by the clerk under certain circumstances or by the Court "[i]f the party against whom judgment by default is sought has appeared in the action." Fed. R. Civ. P. 55(b).

Before a default judgment is entered, the Court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "[C]ourts apply essentially the same standard to motions to set aside [entry of] default and a judgment by default, [but] the former is more readily granted than a motion to set aside a default judgment." See *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). To assess whether Rule 55's good cause standard is met, the Court is obliged to consider a non-exclusive myriad of factors such as "whether the default was willful, whether setting it aside would prejudice [the plaintiff], and whether [the defendant] presented a meritorious defense." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (citation omitted). The Court in its discretion may consider other

factors, such as whether the party acted expeditiously to correct the default. *See Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech., LLC*, 325 F.R.D. 570, 575 (E.D. La. 2016) (Fallon, J.) (citation omitted).

"The burden of showing good cause lies with the party challenging the default entry." *Sindhi v. Raina*, 905 F.3d 327, 332 (5th Cir. 2018) (citation omitted). But "good cause" is "interpreted liberally." *See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (citation omitted). Two factors have "particular significance" such that "[i]f a district court . . . makes either finding, . . . it [may be] within its discretion in refusing to grant relief from a default[:] (1) the defendant's default was ***willful***; or (2) the defendant failed 'to present a meritorious defense sufficient to support a finding on the merits for the defaulting party.'" *In re OCA, Inc.*, 551 F.3d 359, 370 (5th Cir. 2008) (emphasis in original, citations omitted). In other words, "a district court may refuse to set aside a default [ ] if it finds either that the default was willful or that the defendant failed to present a meritorious defense." *See A.P. Moller – Maersk A/S v. Safewater Lines (I) Pvt., Limited*, 784 F. App'x 221, 225 (5th Cir. 2019) (citation omitted) (characterizing these factors as "determinative"); *see also Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (citation omitted) (observing that "[a] finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding" and further observing that "[e]ven in the absence of willful neglect[,] a district court may have the discretion not to upset a default judgment if the defendant fails to present a

meritorious defense sufficient to support a finding on the merits for the defaulting party").

### A. Willfulness

The Court finds that Defendants' default was willful. "A willful default is an 'intentional failure' to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 370 n.32 (5th Cir. 2008) (quotations, citations omitted). Critically, "[a] finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015); *see also Cooper v. Faith Shipping*, No. CIV.A.06-892, 2010 WL 2360668, at *12 (E.D. La. June 9, 2010) (observing that "the Fifth Circuit has consistently held that if a court finds that the failure to answer was willful, it may decline to make any further findings and exercise its discretion not to grant relief from the default judgment").

On September 9, 2024, then-counsel for ECO and Lucas executed a waiver of the service of summons, acknowledging that defendants "must file and serve" responsive pleadings by November 8, 2024, or "a default judgment will be entered against me or the entity I represent."[44] Though the case was briefly closed due to a stay which became effective more than three months *after* the responsive pleadings deadline had lapsed, no responsive pleadings were ever filed. On June 3, 2025, the Clerk of Court granted Walsh's motion for entry of default and a preliminary default was formally entered against ECO, Lucas, and Nichols.[45] Nearly six weeks later on

---

[44] ECF Nos. 7, 8.
[45] ECF No. 20.

July 14, 2025, counsel for ECO and Lucas moved to set aside the entry of default; they do not seek leave to file an answer.

ECO and Lucas claim that their default was not willful; instead, they attempt to explain that Lucas is a "non-lawyer" who "believed that the stay of the ECO proceedings also protected him" and further that both Lucas and ECO "did not willfully ignore this lawsuit; they were simply confused by the web of lawsuits and bankruptcy proceedings entangling the company."[46] Walsh counters that "Defendants willfully ignored this litigation commenced on August 30, 2024 until almost two months after default was entered against them on June 3, 2025." Walsh continues that Defendants' "excuse" that "they were simply confused is disingenuous" considering various motions filed by Defendants in other litigation during the time period where they had failed to respond to this litigation.[47]

"When, as here, a defendant's neglect is at least a partial cause of its failure to respond, the defendant has the burden to convince the court that its neglect was excusable, rather than willful, by a preponderance of the evidence." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (citations omitted). Defendants fail to meet that burden here.

A party's suggestion that he is unsophisticated in legal matters generally fails to implicate excusable neglect, *see id.*, so ECO and Lucas's proffered and unsworn excuse that "they were simply confused by the web of lawsuits" rings hollow, appears contrived, and ultimately falls short of implicating good cause. This is particularly so

---

[46] ECF No. 22-1
[47] ECF No. 25 (and exhibits thereto).

where, as here, ECO and Walsh ostensibly have been represented by counsel throughout these and the other proceedings in which they are parties. There has been no suggestion that Defendants were not served or waived service—their (prior) counsel effected a waiver. Why Defendants neglected this case, but not others, remains unexplained.[48] Defendants offer no evidence to support that their failure to timely appear and respond to this litigation was excusable, rather than willful. For his part, Plaintiff has presented evidence indicating that Defendants took measures to protect themselves from entry of default in other proceedings and that Lucas even requested a stay in a different proceeding. By failing to file a reply to the instant motion, Defendants fail to explain how this litigation confused them but other proceedings ostensibly did not.

Moreover, the Court's willful neglect inquiry "properly focuses on whether [Defendants] willfully failed to respond to the . . . Complaint within the allotted time period, and not how [defendants] responded once [they were] already in default." *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d at 594 (citations omitted). Here, Defendants' service waiver was executed in September 2024 but they still had not answered or appeared when default was entered on June 3, 2025. Considering Defendants' unsupported explanations coupled with their failure to offer evidence or even suggest that they have made efforts to engage with opposing counsel with respect to *this* litigation before the clerk entered the default, Defendants

---

[48] Defendants did not file a reply in further support of their motion to set aside default, rendering Plaintiff's supported contentions regarding willfulness uncontested.

"encroach[ ] on the sort of behavior [the Fifth Circuit] ha[s] decried as 'play[ing] games' with the court." *Wooten*, 788 F.3d at 501 (citations omitted).

Like in *Matter of Dierschke*, the defendants take no issue with service (or waiver of service), were clearly aware of the allegations against them, and still failed to file a responsive pleading. In admitting that they received the complaints, their failure to respond to the instant lawsuit because they were involved in other lawsuits or unfamiliar with litigation practice suffices to constitute willful neglect. *See* 975 F.2d at 184 ("Dierschke chose to make a decision that he hadn't been served when, in fact, he had."). Furthermore, there is no suggestion that Defendants' counsel contacted Plaintiff's counsel to discuss settling the claims, to seek an extension of time to respond, or otherwise demonstrate a willingness to participate in the litigation that would be inconsistent with a willful default. *See, e.g., Marquette Transportation Co. Gulf-Inland, LLC v. Arroyo Terminals, LLC*, No. CV 25-651, 2026 WL 25131, at *3 (E.D. La. Jan. 5, 2026) (citation omitted).

Plaintiff's submission supports a willfulness inference, whereas Defendants' motion proffers vague excuses that hardly qualify as excusable neglect or a willingness to participate in the litigation. Even resolving all doubts in Defendants' favor, this factor weighs in favor of maintaining the entry of default. Though this willfulness finding ordinarily ends the inquiry, the Court performs its duty to consider the next factor, which also favors maintaining the entry of default.

### B. Meritorious Defense

The purpose of the second *significant* good-cause factor—whether defendants have a meritorious defense—is to gauge "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *See In re OCA, Inc.*, 551 F.3d at 373 (internal quotation marks omitted). Thus, "[e]ven in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a district court may have the discretion not to upset a [preliminary] default . . . if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000). A defense is meritorious if it contains "even a hint of suggestion which, proven at trial, would constitute a complete defense." *Marquette Transportation Co. Gulf-Inland, LLC v. Arroyo Terminals, LLC*, No. CV 25-651, 2026 WL 25131, at *4 (E.D. La. Jan. 5, 2026) (citation omitted). However, "presentation of 'mere legal conclusions' is insufficient." *See Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech., LLC*, 325 F.R.D. 570, 575 (E.D. La. 2016) (Fallon, J.) (quoting *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008)). The defendants must instead make a "clear and specific showing . . . by [a] definite recitation of facts" in support of their defense. *See id.*

By offering only a perfunctory response—and indeed oscillating between suggesting they may have (some, unidentified) defenses while also suggesting that Plaintiff's damages calculations are "erroneous"—Defendants fail to satisfy the meritorious defense factor. By failing to contend with any of the alleged facts or

14

claims whatsoever, the Court is left to speculate whether Defendants have either procedural or substantive defenses to advance as to any of Plaintiff's claims.

Here, Defendants make no attempt to show that they have any defenses to any of Plaintiff's claims, much less meritorious defenses. Defendants fail to even provide a proposed responsive pleading for the Court's examination so that it might glean whether a meritorious defense is contemplated. No proposed answer or responsive pleading has been provided—no motion seeking leave to file one is of record.

Looking to the meager contents of ECO's and Lucas's motion to set aside default, still there is nothing indicating what defenses they might advance. Examining the few sentences offered by Defendants suggests, instead, that perhaps they have no meritorious defenses to liability, even if they might—though it is not clear—contest quantum:

> Defendants deny the allegations of plaintiff's claims. The plaintiff . . . has provided grossly erroneous calculations for the money he is owed under the employment contract. Further, the terms of Mr. Walsh's contract provide that Mr. Walsh is not owed commissions until ECO has been paid on the corresponding job, meaning Mr. Walsh is owed nothing, at least for the time being.

As for Walsh's allegations of corporate veil piercing, Defendants merely conclude that "Mr. Lucas and Mr. Nichols deny these vague allegations and deserve an opportunity to litigate Mr. Walsh's claims of veil piercing."

Far from attempting to persuade the Court that they may have a meritorious defense or deserve an opportunity to litigate defenses contained in a proposed answer, Defendants offer no details concerning any contemplated defense at all, much less "even a hint of suggestion which, proven at trial, would constitute a complete

15

defense." By failing to offer any indication as to the substance of any defense, Defendants fail to persuade the Court that there is a possibility that Plaintiff's claims may be resolved on the merits in Defendants' favor. Defendants thus fail to suggest why this matter should not proceed to Plaintiff's presentation on default judgment.

Walsh contends that Defendants' failure to attempt to show they have a meritorious defense defeats their motion to set aside default. The Court agrees. Walsh's presentation of evidence and argument in support of his claims stands starkly in contrast to Defendants' failure to contend with the substantive merit of those claims. For example, while Defendants conclude that Plaintiff's claims are predicated on miscalculations and that "Walsh is owed nothing . . . until ECO has been paid on the corresponding job[,]" Plaintiff offers exhibits in support of his claims for payment respecting specific projects. Because the Defendants have failed to offer any reason to conclude that further proceedings in this case will lead to a result different than that achieved through default judgment, *see OCA*, 551 F.3d at 373, the motion to set aside will be denied. Defendants fail to allege any facts that, if true, would allow them to prevail on the merits such that the Court is left to speculate as to whether there is any meritorious defense that may render the outcome of the suit after a full trial contrary to the result achieved by default. *See id.* (citation omitted).

Because Defendants fail to present or hint at any meritorious defense to be resolved on the merits, they fail to offer any reason why the Court should indulge the policy preference for resolving cases on the merits. This significant factor weighs against setting aside the preliminary default.

### C. Prejudice to Plaintiff

The Fifth Circuit has instructed that the district court need not consider all three factors on the record. *See Matter of Dierschke*, 975 F.2d at 183-84 (finding "more persuasive" those circuit courts "treating the factors in the disjunctive"). However, rather than pretermitting a discussion of other non-exclusive good cause factors, in the interest of completeness, the Court addresses the least significant factor, prejudice.

A plaintiff is not prejudiced where the setting aside of the default simply requires that the plaintiff prove his case. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). "[M]ere delay does not alone constitute prejudice. Rather, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (internal quotation marks omitted).

Defendants contend that Walsh has "continued to litigate his claims against ECO in other jurisdictions [so he] will suffer no harm by the Defendants filing an answer at this time." Walsh counters that he will suffer substantial prejudice if the entry of default is set aside "because any delay in Walsh obtaining a judgment will make it even more difficult to collect a judgment against Defendants[,]" which are in dire financial straits and whose limited resources are already being depleted by "ECO's receiver, purporting to act for the interest of Defendants[.]"

17

On the one hand, insofar as Walsh's arguments appear to be "expected difficulties [he] may face if forced to proceed with further litigation" the same are not legitimate claims of prejudice. *See Jenkens & Gilchrist*, 542 F.3d at 122; *see also Hand v. Secure Lending Inc.*, No. 20-607, 2020 WL 4584187, at *3 (E.D. La. Aug. 10, 2020) (finding plaintiff's conclusory statement that "there is significant concern that [defendant] has not preserved evidence" insufficient to support prejudice). Because no prejudice exists where "setting aside . . . the default [does] no harm to [the] plaintiff except to require it to prove its case," *Lacy*, 227 F.3d at 293, delay standing alone may not suffice.

On the other hand, however, Walsh alludes to something more: it is notable that counsel for Defendants does not attempt to dispute Walsh's submission that "the same attorneys who enrolled as counsel for ECO and Lucas herein are representing La Plata [ECO's most substantial creditor] and the state court receiver (Cordes & Company) in other legal proceedings in Louisiana" and that "ECO has not been dissolved and is adverse to La Plata and Cordes, as those entities are attempting to recover assets that belong to ECO in order to satisfy ECO's financial obligations to La Plata."[49] Reading between the lines, Walsh contends that further delay in resolving this litigation may impede his recovery and may result in (more alleged) fraud and collusion. Without more, however, the Court is unable to assess this claim of additional harm beyond delay—whether Walsh's suggestion rises to the level of

---

[49] ECF No. 25 at 6 n.19.

prejudice under the liberal good cause inquiry at this stage of the proceedings is, at best, a close call.

Ultimately, the Court finds that setting aside the preliminary default indeed may cause additional delay but would not prejudice Walsh such that this factor weighs, however slightly, in favor of setting aside the default. But this is the only factor—and a relatively insignificant one, at that—weighing slightly in Defendants' favor. The other two significant factors weigh in favor of maintaining the default entry.

Accordingly, because Defendants' default was willful and because they offer no defense (much less a meritorious one) to any of Plaintiff's claims, Defendants have failed to show good cause for setting aside the entry of preliminary default.

## III.  CONCLUSION

Mindful that default judgments are disfavored drastic remedies, the Court resolves "any doubt . . . in favor of [the defaulting party] to the end of securing a trial on the merits." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 119 (5th Cir. 2008) (citation omitted). The Court is equally mindful that the policy favoring resolution on the merits "is counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir.1999) (internal quotation marks and citations omitted)). Because

Defendants fail to implicate good cause for setting aside the entry of default against them, for the foregoing reasons,

**IT IS ORDERED** that the motion[50] to set aside entry of default against Defendants ECO Roof and Solar, Inc. and Dylan Lucas is **DENIED**.

New Orleans, Louisiana, this 10th day of March, 2026.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[50] ECF No. 22.